UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Natan Rybak and
Anna Rybak,                                        Case No.: 16-53244
                                                          Chapter 7
              Debtors.                            Hon. Mark A. Randon
_____/

Charles L. Wells, III,

      Plaintiff,

v.                                                          Adversary Proceeding
                                                        Case No.: 17-04417

Michael Rybak,

      Defendant.
_____/

**OPINION AND ORDER: (1) DENYING THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT (DKT. #19); (2) GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. #20); AND (3) DENYING AS MOOT THE TRUSTEE'S MOTION TO COMPEL DISCOVERY (DKT. #18)**

**I. INTRODUCTION**

Whether to help his overwhelmed mother or hinder the collection efforts of her creditor, Michael Rybak opened a DBA checking account in his name and assumed the bookkeeping duties of his mother's unincorporated barber shop. Over the next 11 months, Michael made hundreds of account deposits as revenue came in and used the money solely to pay the business's existing debts.

1

After Michael's mother ("Debtor") jointly filed bankruptcy with her husband, the Chapter 7 Trustee filed an adversary proceeding to avoid the transfers (deposits) to the DBA account as actually and constructively fraudulent. Cross motions for summary judgment are pending.

On the issue of constructive fraud, the Trustee argues that Debtor did not receive a reasonably equivalent value for the transfers because: (1) at the time they were made, Michael was free to spend the money in the DBA account as he pleased; and (2) the money transferred was not concurrently used to satisfy the business's debts. The Trustee reaches this conclusion by aggregating the deposits–without examining whether the Debtor received a reasonably equivalent value for any particular transfer.

At this juncture, questions of fact exist as to Debtor's intent in making the transfers–and Michael's complicity in any alleged fraud. This precludes summary judgment for Michael on the actual fraud count. However, the Court **GRANTS** Michael's motion on the constructive fraud count and **DENIES** the Trustees motion, because Debtor received a reasonably equivalent value, as a matter of law, through: (1) a dollar-for-dollar reduction of her existing debts; (2) Michael's uncompensated bookkeeping services; and (3) his unreimbursed financial contribution, used to establish the account.

II.  BACKGROUND

Debtor is the sole proprietor of Anna's Barbers, an unincorporated barber shop in

West Bloomfield Township, Michigan. The barber shop is staffed by independent contractors who work under a fee-splitting agreement: for each client serviced, the shop receives a pre-set percentage of the barber's fee; the barbers receive the remainder of earned fees the following week.[1]

During the fall of 2015, Debtor faced mounting financial difficulties, and Bank of America sued her on a collection account. Around the same time, a personal tragedy also befell the Rybak family. Debtor turned to her son, Michael, for assistance managing the barber shop's financial affairs. On October 14, 2015, Michael opened a basic business checking account at Comerica Bank in the name of "Michael Rybak DBA Anna's Barber" ("the Account").[2] Michael insists he and Debtor orally agreed that the funds in the Account were to be used for barber shop business only. But the agreement was never reduced to writing. Michael deposited $400.00 of his own money to establish the Account and provide a small amount of operating capital.

Either intentionally or through inadvertence, Debtor's name was omitted from the Account. However, Michael maintains that she did have a signature card on file with the

---

[1] According to employee pay records, the barber shop receives 20 percent of Debtor's receipts and pays her 80 percent; the shop receives 30 percent of the other barbers' receipts and pays them 70 percent.

[2] "'The designation [DBA] means "doing business as" but is merely descriptive of the person or corporation who does business under some other name. Doing *business under another name does not create an entity distinct from the person operating the business*.' The business name is a fiction, and so too is any implication that the business is a legal entity separate from its owner." *Fakhri v. United States*, 31 C.I.T. 1287, 1296 (2007) (emphasis in original) (quotation omitted).

3

bank and was in possession of check books for the business.

Michael began to serve as Anna's Barbers' *de facto* bookkeeper. He took on the responsibilities of depositing all barber shop receipts into the Account, keeping records of deposits and the amounts owed each barber, and using the funds on hand to pay barber earnings and necessary overhead. He neither requested nor received compensation for his services.

Between October 14, 2015, and September 26, 2016, all of the barber shop's receipts–totaling $79,150.10–were deposited into the Account through a series of 322 separate transfers, ranging in amount from $1.50 to $1,318.00. The barber shop's uncontested records (which Michael maintained), reflect that *all* Account deposits were used to pay shop expenses–after they were incurred–in the ordinary course of business. Money was withdrawn from the Account to pay the barbers for the services provided the prior week. After the payment of earnings and business expenses each month, little, if any, money remained in the Account. There is no evidence that Michael spent or diverted any of the barber shop's receipts for his own purposes.

On September 26, 2016, Debtor and her husband jointly filed Chapter 7 bankruptcy. The Trustee seeks to aggregate and avoid the 322 transfers pursuant to 11 U.S.C. §§548(a)(1)(A) and (B), MICH. COMP. LAWS §§566.34(1)(a) and (1)(b), and MICH. COMP. LAWS § 566.35(1). The Trustee seeks to recover the fraudulent transfers under 11 U.S.C. § 550(a).

## III. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment must be granted "if the movant shows that there are no genuine issues as to any material fact in dispute and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pittman v. Cuyahoga County Dep't of Children Services*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The Court must draw all justifiable inferences in favor of the party opposing the motion. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011). However, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). A mere scintilla of evidence is insufficient; there must be evidence on which a jury could reasonably find for the non-movant. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

## IV. ANALYSIS

### A. Genuine Issues of Material Fact Exist as to the Actual Fraud Count

Section 548(a)(1)(A) provides:

> The Trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of petition, if the debtor voluntarily or involuntarily–
>
> made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . indebted[.][3]

The Trustee bears the burden of proof when seeking to avoid a transfer for actual fraud. However, if the Trustee can show "badges of fraud" surrounding the transfers, the burden shifts to Michael to prove Debtor did not make the transfers with actual intent to hinder, delay, or defraud any creditor. *See Schilling v. Heavrin (In re Triple S Rest.)*, 422 F.3d 405, 414 (6th Cir. 2005). "'Badges of fraud[]' . . . are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them." *United States v. Leggett*, 292 F.2d 423, 426 (6th Cir. 1961). But even if the Trustee successfully avoids the transfers, he cannot recover the amount transferred from Michael, if Michael received them for value, "in good faith, and without knowledge of the voidability of the transfer[s] avoided[.]" 11 U.S.C. § 550(b)(1).

The Trustee identifies certain "badges of fraud." As such, if Michael can prove either that Debtor did not intend to hinder, delay, or defraud her creditor's collection

---

[3] Actual fraudulent transfers are also subject to avoidance pursuant to MICH. COMP. LAWS § 566.34(1)(a): "[A] transfer made . . . by a debtor is voidable as to a creditor . . . if the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."

6

efforts *or* he did not knowingly assist Debtor to that end, the Trustee cannot recover the value of the transfers from Michael. Because questions of fact exist as to Debtor's intent in making the transfers–and Michael's complicity in any alleged fraud–summary judgment on this count and the related state-law counts is denied.

### B. The Court finds as a Matter of Law that Debtor Received a Reasonably Equivalent Value in Exchange for the Transfers

Section 548(a)(1)(B) provides:

> The Trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> \* \* \*
>
> (i) received less than a reasonably equivalent value in exchange for such transfer . . .; and
>
> (ii) (I) was insolvent on the date that such transfer was made . . ., or became insolvent as a result of such transfer[.][4]

The Trustee must prove each of four elements, by a preponderance of the evidence, to

---

[4]Michigan statutes are similar. *See* MICH. COMP. LAWS § 566.34(1):

> [A] transfer made . . . by a debtor is voidable as to a creditor . . . if the debtor made the transfer . . . (b) [w]ithout receiving a reasonably equivalent value in exchange for the transfer . . ., and the debtor . . . (ii) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

*See also* MICH. COMP. LAWS § 566.35(1): "A transfer made . . . by a debtor is voidable as to a creditor . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer[.]"

7

avoid the transfers:

1. Debtor transferred an interest in property to Michael;

2. The transfers were made on or within two years of the petition date;

3. Debtor received less than a reasonably equivalent value in exchange for the transfers; and

4. Debtor was insolvent when the transfers were made, or became insolvent as a result of the transfers.

*See Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 F. App'x 337, 341 (6th Cir. 2006) (citations omitted). Both the Trustee and Michael move for summary judgment on the constructive fraud count. The first and third elements are in dispute.

### 1. A Question of Fact Exists as to Whether Debtor Actually Transferred Property to Michael

Michael argues that Debtor did not, technically, transfer any property to him. Instead, he and Debtor had an oral agreement that all funds deposited into the Account were to be held in trust for the barber shop and used exclusively for the business.

Under Michigan law, an express trust for personal property may be established orally. *Osius v. Dingell,* 134 N.W.2d 657, 660 (Mich. 1965). However, "[i]t is a general principle of trust law that a trust is created only if the settlor [Debtor] manifests an intention to create a trust, and it is essential that there be an explicit declaration of trust accompanied by a transfer of property to one for the benefit of another." *Id.*

The evidence supporting the existence of an express trust is inconsistent. For example, Michael's affidavit asserts, "Anna Rybak and I expressly agreed that the

8

17-04417-mar    Doc 33    Filed 02/13/18    Entered 02/13/18 15:42:34    Page 8 of 15

Account would be used for Barber Shop purposes and to satisfy the obligations of the Barber Shop and Anna Rybak only." But it also states, "Anna Rybak was . . . intended to be a named holder of the Account, and was only omitted due to Comerica's error." The fact that Debtor was supposed to be named on the Account with Michael is at least some evidence that her intent was to simply open a joint bank account, and she did not have the intent to create a trust.

The Court also finds that Michael's affidavit, alone, does not rise to the level of clear and convincing evidence sufficient to find as a matter of law that a trust existed. *See* MICH. COMP. LAWS § 700.7407 ("the creation of an oral trust and its terms may be established only by clear and convincing evidence").

### 2. Debtor Received a Reasonably Equivalent Value in Exchange for the Transfers

A two-step analysis is used to determine a reasonably equivalent value. First, a court should determine whether the debtor received *any* value in exchange for the transfers. *In re Wilkinson*, 196 F. App'x at 341. Next, a court should determine if the value received was reasonably equivalent. *Id.* (Citation omitted). Because the Trustee does not challenge the first step, the Court skips to the second and determines whether or not Debtor received a reasonably equivalent value in exchange for the transfers.

The Trustee cites *Taunt v. Hurtado (In re Hurtado)*, 342 F.3d 528 (6th Cir. 2003) for the proposition that Debtor did not receive a reasonably equivalent value, because once the transfers to the Account were made, he could have used the money for his own

9

purposes. *See In re Hurtado*, 342 F.3d at 533 (an individual with full control over money is "free to invest . . . in lottery tickets or uranium stocks") (quotation omitted). The issue in that case, however, was whether the defendant was an "'initial transferee' from whom the Trustee could *recover* a fraudulent conveyance under 11 U.S.C. § 550[.]" *Id.* at 530 (emphasis added). Here, the issue is whether the Trustee can *avoid* the transfers as fraudulent under section 548. "[A]voidance and recovery are distinct concepts and processes." *Sunhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir. 2003). The "dominion-and-control test" applies to recovering a fraudulent transfer–after it is first determined that it can be avoided. *See In re Hurtado*, 342 F.3d at 533-34.

The Trustee also argues that the time for determining a reasonably equivalent value is the date the funds were transferred. *See Allard v. Flamingo Hilton (In re Chomakos)*, 69 F.3d 769, 771 (6th Cir. 1995) (the critical time is when the transfer is made). In *In re Chomakos*, the debtors lost several thousand dollars at a casino. The trustee sought to recover the pre-petition gambling losses from the casino operator. *In re Chomakos*, 69 F.3d at 769-70. The Sixth Circuit held that "[t]he point in time as of which we must determine whether [debtors] received property of reasonably equivalent value in exchange for the money they wagered at the casino is the point at which their bets were placed"). *Id.* at 770. According to the Trustee, "[b]ecause any value provided to Debtor Anna Rybak from [Michael] was not contemporaneous with the Transfers, [Michael] provided no reasonably equivalent value 'in exchange for' the Transfers."

The Trustee's strict application of *In re Chomakos* would require the Court to

10

individually examine each of the 322 transfers for reasonably equivalent value.[5] For example:

1. $141.24 was deposited into the Account on October 27, 2015;

2. $18.50 was deposited into the Account on November 25, 2015;

3. $1.50 was deposited into the Account on December 23, 2015; and

4. $20.00 was deposited into the Account on January 7, 2016.

Under the Trustee's theory, when those dollar amounts went into the Account, they should have contemporaneously been exchanged for a reasonably equivalent value.[6] This is not feasible or practical in a bookkeeping scenario. *See Gresk v. Bulmer*, No. 15-3116-RLM-7A, 2017 WL 562436, at *4 (Bankr. S.D. Ind. Feb. 10, 2017) ("[t]here is no precise mathematical formula involved in determining reasonably equivalent value; rather it is a 'common sense' inquiry that considers the circumstances of each case"). Instead, the Court looks at both the totality of the circumstances–and specific transfers–and

---

[5]Ironically, the Trustee fails to analyze a single transfer at the time it was made. For example, the first three deposits to the Account were on October 14, 2015, for a total of $2,139.00. *At the time of those deposits*, Michael had contributed $400.00 of his own money to the Account and had already undertaken uncompensated bookkeeping duties on behalf of the business. Five days later, Michael used those deposits to pay the barbers for their prior week's earned fees and other overhead. Subsequent Account deposits would have been, at least, made in exchange for the satisfaction of those antecedent debts, and so on.

[6]The Trustee argues that money was not simultaneously going in and coming out, because at one point, there was a $2,400.00 balance in the Account. But there were also times when the Account had a negative balance. As of January 29, 2018, there was approximately $300.00 in the Account–less than the amount Michael contributed.

11

"compares the value received and the transfer to determine 'whether the debtor got roughly the value [she] gave.'" *Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*, 491 B.R. 747, 769 (Bankr. W.D. La. 2013) (quoting *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 212-13 (3d Cir. 2006)); *see also Fisher v. Slone (In re Fisher)*, 296 F. App'x 494, 501 (6th Cir. 2008) ("[T]he test used to determine whether a transfer was supported by reasonably equivalent value focuses on whether there is a reasonable equivalence between the value of property surrendered and that which was received in exchange.") (Quoting *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 708 (6th Cir. 1999)).

The Bankruptcy Code does not define "reasonably equivalent value." However, "value" is defined as the "satisfaction . . . of a present or antecedent debt of the debtor[.]" 11 U.S.C. § 548(d)(2)(A). And courts have held that "[a] debtor receives reasonably equivalent value when [she] receives a direct or indirect economic benefit." *See e.g.*, *Sarachek v. Wahls (In re Agriprocessors, Inc.)*, 490 B.R. 374, 382 (Bankr. N.D. Iowa 2013) (citation omitted). "An economic benefit, and therefore reasonably equivalent value, exists when a debtor pays an antecedent debt. The debtor receives an economic benefit *even if the payment does not go directly from a debtor to the person or entity the debtor owes*." *Id.* (Internal citations omitted) (emphasis added).

In *Schoenmann v. BCCI Constr. Co. (In re Northpoint Communications Grp., Inc.)*, 361 B.R. 149 (Bankr. N.D. Cal. 2007), for example, debtor owed subcontractors over $1.4 million. A general contractor agreed to collect payments from the debtor on

12

behalf of three subcontractors and turn the payments over to the subcontractors even though it was not legally obligated to them. *In re Northpoint Communications Grp., Inc.*, 361 B.R. at 153. The trustee filed an action to recover–as constructively fraudulent transfers–the payments debtor made to the general contractor on behalf of the subcontractors. *Id.* at 154. The court held that the trustee was not entitled to recover the payments: "[debtor] received reasonably equivalent value for the [subcontractor] payments, because the payments were promptly transferred to the [subcontractors] in satisfaction of [debtor's] obligations to those [subcontractors]." *Id.* at 160 (citation omitted).

Similarly, Michael used the money deposited into the Account to satisfy Debtor's antecedent debts: she owed the barbers for services they had already performed. According to the employee pay records and bank statements, Michael made payments every week in the ordinary course of business. For example:

1. Between October 10, 2015, and October 16, 2015, the employee pay records show the barbers earned $1,812.00; on October 19, 2015, Michael withdrew $1,812.00 to pay the barbers.

2. Between October 24, 2015, and October 30, 2015, the employee pay records show the barbers earned $1,802.00; on November 2, 2015, Michael withdrew $1,802.00 to pay the barbers.

3. Between February 6, 2016, and February 12, 2016, the employee pay records show the barbers earned $1,309.00; on February 16, 2016, Michael withdrew $1,309.00 to pay the barbers.

4. Between June 26, 2016, and July 2, 2016, the employee pay records show the barbers earned $1,478.00; on July 5, 2016, Michael withdrew $1,478.00 to pay the barbers.

This, alone, constitutes reasonably equivalent value. *See Southwest Waffles, LLC v. United States Dep't of Treasury/Internal Revenue Serv. (In re Southeast Waffles, LLC)*, 702 F.3d 850, 857 (6th Cir. 2012) ("Typically, a dollar-for-dollar reduction in debt constitutes–as a matter of law–reasonably equivalent value for purposes of the fraudulent-transfer statutes."). There was no diminution of Debtor's bankruptcy estate.

The value Michael provided Debtor, however, went further. He made sure the barber shop survived by paying the business's overhead; contributed $400.00 of his own money to start the Account;[7] and was not paid for his management and bookkeeping services, despite the demonstrated value to Debtor.[8]

The facts of this case are also distinguishable from *Helms v. Roti (In re Roti)*, 271 B.R. 281 (Bankr. N.D. Ill. 2002), another case upon which the Trustee relies. There, the debtor's daughters were not acting as *de facto* bookkeepers; they used debtor's lump sum deposits to their accounts to pay his current expenses as *he* directed. The daughters commingled their money with the debtor's and used the transfers primarily for his

---

[7]The Trustee moved to compel the production of cancelled checks to examine what Michael did with the money. In response, Michael produced "dozens" of checks but failed to produce five checks, which he was unable to obtain from Comerica Bank. The Court finds the missing checks will not change its determination that Debtor received a reasonably equivalent value. As such, the motion to compel is **DENIED AS MOOT**.

[8]The Occupational Employment Statistics from the Bureau of Labor reported that as of May 2016, the mean annual wage for bookkeeping, accounting, and auditing clerks was $40,220.00. *See* https://www.bls.gov/oes/current/oes433031.htm (last visited February 12, 2018). Because Michael assumed the bookkeeping duties at no cost to the Debtor, she was able to forgo paying a salary for those services.

14

benefit–rather than for the benefit of his creditors. *In re Roti*, 271 B.R. at 288, 298. In contrast, Michael did not deposit any of his money into the Account–other than his $400.00 unreimbursed initial deposit. And although Debtor occasionally received a small profit from any excess revenue, the money in the Account was primarily used to pay barbers and the business's overhead.

Assuming the Trustee can prove that Debtor transferred property to Michael, the Court finds as a matter of law that Debtor received a reasonably equivalent value in exchange for the transfers. Michael is entitled to summary judgment on this count and the related state-law counts.[9]

### V. CONCLUSION

The Court **DENIES** the Trustee's motion, and **GRANTS IN PART** Michael's motion. Specifically, the Trustee's causes of action under 11 U.S.C. § 548(a)(1)(A) and MICH. COMP. LAWS § 566.34(1)(a) will proceed to trial on *March 29, 2018, at 10:00 a.m*.

The Trustee's causes of action under 11 U.S.C. § 548(a)(1)(B), MICH. COMP. LAWS § 566.34(1)(b), and MICH. COMP. LAWS § 566.35(1) are dismissed.

**IT IS ORDERED**.

**Signed on February 13, 2018**



/s/ Mark A. Randon
**Mark A. Randon**
**United States Bankruptcy Judge**

---

[9]The Court does not reach the issue of whether the Trustee can recover the alleged fraudulent transfers, because the transfers are not avoidable under section 548(a)(1)(B).